UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KENNETH MCCLELLEN ADKINS,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Case No: 6:25-cv-1451-JSS-LHP

RICKY DIXON, JESS BALDRIDGE,
and UNKNOWN OTHERS,

    Defendant.
_____/

## **ORDER**

    Pursuant to 28 U.S.C. § 1915A, the court screens the amended complaint filed by Plaintiff, a convicted and sentenced state prisoner proceeding pro se. (*See* Dkt. 16.) Upon consideration, for the reasons outlined below, the court dismisses the amended complaint without prejudice and permits Plaintiff to file a second amended complaint.

## **BACKGROUND**

    Plaintiff initiated this action by filing a civil rights complaint (Dkt. 1) in the Fort Myers Division of this District. The complaint was screened for frivolity under 28 U.S.C. § 1915A and was dismissed without prejudice because Plaintiff impermissibly "assert[ed] three sets of unrelated claims against defendants employed at three different prisons" that could not "be joined together in a single action because they did not arise out of the same transaction or occurrence." (Dkt. 15 at 1–2.) Plaintiff was permitted to file an amended complaint pertaining to one of the sets of claims, and the court informed Plaintiff that if he did so, the court would transfer the complaint to the

appropriate court if necessary. (*Id.* at 2.) Plaintiff thereafter filed the amended complaint (Dkt. 16) against officials at the Central Florida Reception Center (CFRC) in Orlando, Florida, and the case was accordingly transferred to this court.

In his amended complaint, Plaintiff sues Ricky Dixon as the Secretary of the Florida Department of Corrections, Jess Baldridge as the Warden of CFRC, and unknown others described as transfer and receiving officers for CFRC. (*Id.* at 1, 3–4.) Plaintiff alleges that on December 2, 2024, after his property was inventoried and stored for his housing in administrative confinement, his property was returned to him, and he was assigned to a general population housing unit instead of administrative confinement. (*Id.* at 5.) Purportedly, he received this housing assignment in violation of policy and protocol and was "maliciously and intentionally" "assigned with a rival/conflicting security threat group member." (*Id.*) Because of this housing assignment, Plaintiff states, he was "threatened [and] attacked by numerous individuals," and he consequently suffered serious injuries. (*Id.*) Plaintiff's reported injuries include permanent scarring and facial bone structure disfigurement, two sets of sutures, and two fractured ribs. (*Id.*) Plaintiff also claims that he was "bludgeoned and bruised from head to toe." (*Id.*) Plaintiff asserts that Defendants orchestrated the improper housing assignment to retaliate against him because he filed a 42 U.S.C. § 1983 complaint against the Florida Department of Corrections related to the denial of hepatitis C treatment. (Dkt. 16 at 5.) Plaintiff identifies "malicious deliberate indifference [and] cruel [and] unusual punishment" as the constitutional rights violated by Defendants. (*Id.*)

## APPLICABLE STANDARDS

A federal court must conduct an initial screening of certain civil suits brought by prisoners. 28 U.S.C. § 1915A(a). "A dismissal for failure to state a claim under the early screening provision is no different from a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Danglar v. Dep't of Corr.*, 50 F.4th 54, 55 n.1 (11th Cir. 2022) (quoting *White v. Lemma*, 947 F.3d 1373, 1376–77 (11th Cir. 2020)). Thus, the court "accept[s] the allegations in the . . . complaint as true and construe[s] them in the light most favorable to" the plaintiff. *Id.* "To avoid dismissal for failure to state a claim, [the] complaint must include factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the alleged misconduct." *Waldman v. Ala. Prison Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). "A pro se pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." *Id.* "However, a pro se pleading must still suggest that there is at least some factual support for a claim." *Id.* Moreover, a plaintiff's pro se status does not permit the court to "serve as de facto counsel for [him] or to rewrite an otherwise deficient pleading . . . to sustain an action." *Campbell v. Air Jam., Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation omitted).

## ANALYSIS

The amended complaint fails to state a claim for relief. Plaintiff does not allege the existence of an objectively unreasonable risk to his safety, any Defendant's subjective knowledge of such risk, sufficient details regarding any Defendant's

individual participation in the alleged constitutional violations, a policy or custom leading to the alleged constitutional violations, or a causal relationship between Plaintiff's prior civil rights action against the Florida Department of Corrections and his allegedly improper housing assignment.

Plaintiff asserts that Defendants were deliberately indifferent to a serious risk of harm to him and subjected him to cruel and unusual punishment. (Dkt. 16 at 5.) The Eighth Amendment prohibits the government from inflicting cruel and unusual punishment, and the Supreme Court has determined that a "prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 828–29 (1994) (quotation omitted). To state a claim for deliberate indifference to an inmate's safety, a plaintiff must plead three elements: "(1) a substantial risk of serious harm[,] (2) the defendants' deliberate indifference to that risk[,] and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quotation omitted). The first element "is assessed objectively and requires the plaintiff to show conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Id.* (quotation omitted). The second element has subjective and objective components:

> Subjectively, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and also draw the inference. Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act.

*Id.* (cleaned up). For the third element, "the plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury." *Id.*

(quotation omitted).

The amended complaint does not adequately allege the first element. It states that policy and protocol required Plaintiff to be housed in administrative confinement, that inmates in administrative confinement are not to be commingled with inmates in the general population, and that Plaintiff was housed with a "rival/conflicting security threat group member." (Dkt. 16 at 5.) These allegations imply that Plaintiff himself was part of a security threat group, but they are insufficient to establish the existence of an objectively unreasonable risk of serious injury to Plaintiff's future health or safety. Plaintiff does not allege, for example, the reason for housing him in administrative confinement versus the general population, the security threat groups to which he and the rival inmate belonged, or the nature and extent of the threat posed by commingling inmates from those groups. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a complaint must be supported by more than "mere conclusory statements"); *Smith v. Owens*, 625 F. App'x 924, 927 (11th Cir. 2015) ("[C]onclusory allegations are insufficient to meet [the p]laintiff's burden of supporting his complaint with specific factual assertions."). Even if Plaintiff had sufficiently alleged the first element, he fails to allege any Defendant's subjective "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that such Defendant actually "dr[e]w the inference." *See Marbury*, 936 F.3d at 1233. Plaintiff does not state that any named Defendant was actually aware, for example, that he was part of a security threat group, that his group was a rival to that of the inmate assigned to the same housing unit, or that housing them together would risk

- 5 -

Plaintiff's safety. (*See* Dkt. 16.)

A prisoner can state a deliberate indifference claim "by showing that [prison] officers knew of a specific threat against" the prisoner. *Nelson v. CorrectHealth Muscogee, LLC*, 644 F. Supp. 3d 1359, 1367–68 (M.D. Ga. 2022); *see Marbury*, 936 F.3d at 1236–37 ("[A] plaintiff can establish deliberate indifference to a substantial risk of serious harm where he has given prison officials further information enabling them to conclude that the risk was substantial and not merely possible. In *Rodriguez v. Secretary for Department of Corrections*, [508 F.3d 611 (11th Cir. 2007),] a prisoner informed prison staff that members of his former gang had threatened to kill him upon release into the general prison population. [The Eleventh Circuit] concluded that if true, this allegation was enough to place the defendants on notice of a substantial risk of serious harm—so [the Eleventh Circuit] allowed the case to proceed. . . . *Rodriguez* involved a series of threats that contained enough specific information—the threats came from members of the plaintiff's former gang—that prison officials could have reasonably inferred that there was a substantial, not merely possible, risk of harm." (footnotes omitted)). That said, a plaintiff need not plead a specific threat if the allegations contain "enough other information to show a specific risk of serious harm." *Nelson*, 644 F. Supp. 3d at 1367–68 (concluding that the defendants "had enough information to infer that [a detained attacker] posed a substantial risk of serious harm to white inmates" when the defendants knew that (1) the attacker stabbed a clerk repeatedly, (2) the attacker targeted the clerk without provocation, (3) the only reason that the attacker stabbed the clerk was because the clerk was white, and (4) the attacker's "sole

motivation for his attack of the clerk was his irrational response to the racially charged atmosphere connected to the widespread publicity of whites killing blacks"). Here, however, Plaintiff does not describe a specific threat or a specific risk of serious harm.

Further, Plaintiff does not describe how Defendants participated in the purported constitutional violation. "While [the court] do[es] not require technical niceties in pleading, [it] must demand that the complaint state with some minimal particularity how overt acts of [a] defendant caused a legal wrong." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (quotation omitted); *see Balbin v. Latin*, No. 22-cv-20332, 2022 WL 426508, 2022 U.S. Dist. LEXIS 24610 (S.D. Fla. Feb. 11, 2022) (permitting deliberate indifference claims to proceed against some defendants and dismissing such claims against other defendants based on consideration of each defendant's alleged acts and omissions). Plaintiff also cannot hold Secretary Dixon and Warden Baldridge liable merely because of their supervisory positions, and Plaintiff does not identify any personal involvement by the supervisors in the alleged constitutional violation or any causal connection between their conduct and the violation. *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ("While a supervisor may be held liable under section 1983 if the supervisor had personal involvement in the constitutional deprivation or if a sufficient causal connection exists between the supervisor's conduct and the constitutional violation, [the plaintiff] alleges no personal involvement or sufficient causal connection to support a section 1983 cause of action." (citation omitted)). Moreover, to hold an officer liable in an official capacity, which equates to suing the governmental entity for which the officer works,

a plaintiff must plead that a policy or custom inflicted the constitutional injury. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (1993) ("To attribute liability to a municipality under [section] 1983, the plaintiff must demonstrate that the municipality had an official policy that was the moving force of the constitutional violation." (quotation omitted)). Here, however, Plaintiff does not plead the existence of a policy or custom leading to the alleged violation of his constitutional rights. Indeed, he alleges to the contrary that his improper housing assignment violated policy and protocol. (Dkt. 16 at 5.) Nor does Plaintiff set forth "facts supporting an inference that [any officers] directed the unlawful action or knowingly failed to prevent it" or facts demonstrating "a history of widespread abuse that put [any officers] on notice of an alleged deprivation that [they] then failed to correct." *Barr v. Gee*, 437 F. App'x 865, 875 (11th Cir. 2011).

In addition to an Eighth Amendment claim, Plaintiff brings a First Amendment retaliation claim. Specifically, Plaintiff states that he was given the improper housing assignment in retaliation for his lawsuit against the Florida Department of Corrections relating to his medical care. (Dkt. 16 at 5.) "[T]he First Amendment prohibits officials from retaliating against prisoners for exercising their right of free speech by filing lawsuits or grievances." *Mpaka v. Jackson Mem'l Hosp.*, 827 F. App'x 1007, 1010 (11th Cir. 2020). To state a retaliation claim, a plaintiff must satisfy three elements: (1) "his speech was constitutionally protected," (2) he "suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech," and (3) "there is a causal relationship between the

retaliatory action . . . and the protected speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (alteration adopted and quotation omitted). Here, Plaintiff fails to allege the required causal relationship. Although he asserts in general terms that the housing assignment was due to his prior civil rights action, he does not plead facts to support this assertion. *See Malcolm v. Hypower Inc.*, No. 19-CIV-60573-CV, 2019 WL 11555240, at *3, 2019 U.S. Dist. LEXIS 56550, at *8 (S.D. Fla. Apr. 1, 2019) ("Other than threadbare, conclusory allegations, [the p]laintiff has failed to state a claim for retaliation."); *Brockington v. Ga. Dep't of Corr.*, No. 5:14-CV-163-MTT-CHW, 2014 WL 3843550, at *3, 2014 U.S. Dist. LEXIS 107405, at *8 (M.D. Ga. June 10, 2014) ("[A] vague claim of retaliation does not survive preliminary review."), *report and recommendation adopted by* 2014 WL 3843550, at *1, 2014 U.S. Dist. LEXIS 106780, at *1 (M.D. Ga. Aug. 5, 2014); *see also Mendoza v. Dixon*, No. 4:20-CV-00214-MW-MAF, 2021 WL 6494945, at *2, *8, 2021 U.S. Dist. LEXIS 250347, at *4, *20–22 (N.D. Fla. Dec. 7, 2021) (recommending that a First Amendment retaliation claim proceed when the defendant reportedly slapped the plaintiff "multiple times, while [he] was handcuffed and shackled, and threatened to retaliate and put him at further risk of harm [from other inmates] if he did not drop . . . allegations," because "two days later, [the defendant allegedly] carried out the threat by assigning [an inmate] to the same cell as [the p]laintiff"), *report and recommendation adopted by* 2022 WL 124165, at *1, 2022 U.S. Dist. LEXIS 7165, at *1 (N.D. Fla. Jan. 13, 2022).

## CONCLUSION

Accordingly:

1. The amended complaint (Dkt. 16) is **DISMISSED without prejudice**.

2. If Plaintiff desires to proceed in this action, he must, on or before October 31, 2025, file a second amended complaint that remedies the deficiencies noted herein, otherwise states a claim for relief, and fully complies with the Federal Rules of Civil Procedure and the Middle District of Florida Local Rules.

    a. To amend his complaint, Plaintiff shall fill out a new civil rights complaint on the appropriate form and shall mark it "Second Amended Complaint."

    b. The second amended complaint completely supersedes Plaintiff's prior complaint and amended complaint. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999). Thus, the second amended complaint must include **all** claims and the facts supporting those claims that Plaintiff seeks to assert in this action. The second amended complaint may not refer to or incorporate portions of the prior complaint or amended complaint.

    c. In the second amended complaint, Plaintiff must describe the actions taken by each Defendant and how those actions violated his constitutional rights.

    d. The second amended complaint is subject to screening for frivolity under 28 U.S.C. § 1915A.

3. **Plaintiff is advised that his failure to timely and fully comply with this order**

**will result in the dismissal of this action without further notice to Plaintiff**.

4. Plaintiff shall immediately advise the court of any change of his address. He shall entitle the paper "Notice to the Court of Change of Address." This notice shall contain only information pertaining to the address change and the effective date of such and should not contain other motions or requests. **Failure to inform the court of an address change may result in the dismissal of this action without further notice to Plaintiff**.

5. The Clerk is **DIRECTED** to mail to Plaintiff, along with this order, a copy of the standard prisoner civil rights complaint form.

**ORDERED** in Orlando, Florida, on October 2, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Parties